**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| GAYE LAFOE, individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br>v.<br><br>UNIVERSITY SURGICAL ASSOCIATES, PLLC<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. _______________ |

**<u>NOTICE OF REMOVAL</u>**

Defendant University Surgical Associates, PLLC ("University Surgical") hereby removes this putative class action from the Chancery Court of Hamilton County, Tennessee to the United States District Court for the Eastern District of Tennessee, Southern Division. Plaintiff Gaye Lafoe ("Plaintiff") brings claims on behalf of herself and a putative class, alleging common law claims arising from a criminal third-party cybersecurity incident that allegedly affected information maintained by University Surgical. *See* attached Exhibit 1, Class Action Complaint ("Complaint") ¶¶ 1-4. This Court has jurisdiction under the Class Action Fairness Act ("CAFA") because the purported class size exceeds 100 members, minimal diversity exists, and the maximum amount in controversy exceeds $5 million. *See* 28 U.S.C. §§ 1441; 1446; 1332(d); 1453(b). Removal is timely under 28 U.S.C. § 1446(b)(1).

**I. Plaintiffs' Claims And Relief Sought.**

On August 28, 2026, Plaintiff commenced this action in the Chancery Court of Hamilton County, Tennessee, by filing a lawsuit captioned *Gaye Lafoe v. University Surgical Associates, PLLC*, Case No. 26-0631 (the "State Court Action").

Plaintiff's Class Action Complaint in the State Court Action alleges that "according to a report filed on August 24, 2026, with the Vermont Attorney General's Office, Defendant was recently the victim of a cyberattack whereby unauthorized actors were able to access and exfiltrate Private Information off its systems." Ex. 1 at ¶ 2. Plaintiff's Complaint further alleges that University Surgical failed to secure and safeguard Plaintiff's and "thousands of individuals'" detailed private information. *Id*. at ¶ 55. Plaintiff's complaint asserts five counts against University Surgical: (1) Gross Negligence; (2) Negligence *Per Se*; (3) Breach of Confidence; (4) Unjust Enrichment; and (5) Invasion of Privacy/Intrusion Upon Seclusion. *Id*. at ¶¶ 171-236.

As a result, Plaintiff alleges they have suffered numerous injuries, "including but not limited to (a) invasion of privacy; (b) lost or diminished value of their Private Information; (c) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (d) loss of benefit of the bargain; and (e) the continued and certainly increased risk to their Private Information, which (i) remains unencrypted and available for unauthorized third parties to access and abuse; and (ii) remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.." *Id*. at ¶ 189; *see also id.* at ¶¶ 203, 214.

Plaintiff, on behalf of herself and a putative class, seeks damages in numerous forms, including equitable relief, declaratory relief, injunctive relief, compensatory damages, actual damages, exemplary damages, punitive damages, restitution, prejudgment and post-judgment interest and all such relief to which Plaintiff and the Class are entitled. *Id.* at Prayer for Relief ¶¶ B-I.

## II. Removal Is Proper Under CAFA.

This Court has jurisdiction under CAFA because this lawsuit is a purported "class action," (Complaint ¶ 1), in which (i) the putative class size includes at least 100 persons; (ii) minimal diversity exists; and (iii) the amount in controversy exceeds $5 million. *See* 28 U.S.C. § 1332(d)(1)(B) (defining "class action" to include state law class actions); *id.* § 1332(d)(2) (granting district courts original jurisdiction over purported class actions in which the amount in controversy exceeds $5 million and "any member of a class of plaintiffs is a citizen of a State different from any defendant"); *id.* § 1332(d)(5)(B) (listing requirements for removal under CAFA); 28 U.S.C. § 1446 (permitting removal). Here, all three of the CAFA prerequisites are satisfied.

### A. The Putative Class Includes More Than 100 Members.

First, the proposed class consists of more than 100 members. To be removable under CAFA, a purported class must include at least 100 putative members. 28 U.S.C. § 1332(d)(5)(B). Plaintiff purports to bring this action on behalf of "[a]ll individuals residing in the United States whose Private Information was compromised in Defendant's Data Breach (the 'Class')." Ex. 1 at ¶ 158. Plaintiff further states that the proposed nationwide class consists of "thousands of individuals." Ex. 1 at ¶ 55. As such, the purported class includes at least 100 putative members.

### B. Minimal Diversity Exists.

Second, the parties are minimally diverse. Minimal diversity exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A); *see also Roberts v. Mars Petcare US, Inc.*, 874 F.3d 953, 955 (6th Cir. 2017) ("[U]nder CAFA, federal courts may hear class actions with minimal diversity, such that only one plaintiff and one defendant need be citizens of different States, so long as there are 100 or more

class members and an aggregate amount in controversy of at least $5,000,000."). Plaintiff is a citizen of Tennessee. Ex. 1 at ¶ 13. Defendant is a Tennessee professional limited liability company with its principal place of business in Chattanooga, Tennessee. Ex. 1 at ¶ 14. For purposes of 28 U.S.C. § 1332(d)(10), University Surgical is a citizen of the state of Tennessee.

Minimal diversity exists because Plaintiff seeks to represent "[a]ll individuals residing in the United States whose Private Information was compromised in Defendant's Data Breach." Ex. 1 ¶ 158. The proposed class therefore expressly includes non-Tennessee residents and citizens. *See id. at* ¶¶ 55, 158.

Moreover, publicly available breach notifications issued by multiple states, including Massachusetts and Vermont, identify residents of those states as allegedly affected by the incident, including 29 individuals in Massachusetts and five (5) individuals in Vermont.[1] Accordingly, at least one putative class member is a citizen of a state different from Defendant, satisfying 28 U.S.C. § 1332(d)(2)(A).

**C. The Amount in Controversy Exceeds $5,000,000.**

Third, the amount in controversy plausibly "exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). For purposes of determining the amount in controversy, CAFA requires that "the claims of the individual class members shall be aggregated." 28 U.S.C. § 1332(d)(6). When determining whether the amount in controversy exceeds the $5 million jurisdictional threshold, the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover. *Dudley v. Eli Lilly & Co.*,

[1] Mass. Office of Consumer Affs. & Bus. Regul., *Data Breach Report 2026*, mass.gov/doc/data-breach-report-2026/download (last visited Nov. 6, 2026) (noting that 29 Massachusetts residents were potentially affected); Vt. Office of the Att'y Gen., *Security Breach Notices*, ago.vermont.gov/categories/security-breach-notices (noting that five (5) Vermont residents were potentially affected) (last updated Oct. 6, 2026).

778 F.3d 909, 913 (11th Cir. 2014). This standard "does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (citation omitted). Rather, "the defendant has the burden of demonstrating, by a preponderance of the evidence, that the amount in controversy has been met." *Smith v. Nationwide Property and Cas. Ins. Co.*, 505 F.3d 401, 404 (6th Cir. 2007). "Plaintiffs' claim of damages exceeding the federal amount in controversy is presumed correct unless shown to a legal certainty that the amount is actually less than the federal standard." *Freeman v. Blue Ridge Paper Products, Inc.*, 551 F.3d 405, 409 (6th Cir. 2008).

Here, Plaintiff, on behalf of herself and the putative class, brings five counts against University Surgical for gross negligence, negligence *per se,* breach of confidence, unjust enrichment, and invasion of privacy/intrusion upon seclusion. Ex. 1 at ¶¶ 171-236. Plaintiff alleges that each member of the prospective putative class is entitled to a wide range of damages, including equitable relief; declaratory relief; injunctive relief; compensatory damages; actual damages, exemplary damages; punitive damages; restitution; prejudgment and post-judgment interest; and all such relief to which Plaintiff and the Class are entitled. *Id.* at Prayer for Relief ¶¶ B-I. The Complaint suggests that there are "thousands of individuals" of potential class members. *Id.* at ¶ 55.

While the Complaint does not expressly quantify these damages, given the potential size of the putative class, the numerous forms of relief sought, and publicly-available sources, Plaintiff's class action complaint satisfies the $5 million threshold. For example, the requested injunctive relief alone exceeds $5 million. *See Macken v. Jensen*, 333 F.3d 797, 799-800 (7th Cir. 2003) ("In a suit for injunctive relief, the amount in controversy is measured by the value of the

object of the litigation. . . . the object may be valued from either perspective – what the plaintiff stands to gain, or what it would cost the defendant to meet the plaintiff's demand."). Plaintiff alleges that Class Members will need to bear the cost of credit monitoring for a minimum of five years due to Defendant's failure to safeguard their Private Information. Ex. 1 at ¶ 144. The Complaint alleges that such services cost "at least $200 or more per year per Class Member." *Id.* Using a conservative estimate of only 6,000 class members—in the middle of Plaintiff's allegations of "thousands of individuals," (*id.* at ¶ 55)—the requested credit-monitoring relief alone places approximately $6,000,000 in controversy.[2] This calculation alone excludes Plaintiff's requests for compensatory damages, actual damages, exemplary damages, punitive damages, restitution, prejudgment and post-judgment interest, and other monetary recovery.

In addition, Plaintiff also seeks extensive injunctive remedies requiring the Defendant to implement security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing Private Information is not accessible online and that access to such data is password protected. Ex. 1 at ¶ 155, Prayer for Relief ¶ e. The cost of complying with such requested relief further supports the conclusion that the aggregate amount in controversy exceeds $5,000,000. *Macken*, 333 F.3d at 799-800.

The amount in controversy is further supported by Plaintiff's claims for actual and compensatory damages on behalf of a putative class that allegedly consists of "thousands of individuals." Ex. 1 at ¶ 55. Plaintiff alleges that each class member has suffered a broad range of compensable injuries, including invasion of privacy, lost or diminished value of their Private Information, lost opportunity costs, loss of the benefit of the bargain, continued and increased risk to their Private Information, emotional distress associated with the loss of control, out-of-pocket

[2] 6,000 class members x $200 per year x 5 years = $6,000,000.

expenses incurred to prevent or detect identity theft, and other economic and noneconomic losses. *Id.* at ¶¶ 10, 151-54, 189-90. When those alleged injuries are aggregated across a putative class consisting of thousands of individuals, the amount in controversy readily exceeds the jurisdictional threshold.[3]

Moreover, Plaintiff seeks to recover damages based upon an alleged lifetime risk of identity theft due to the nature of the Private Information lost. ¶ 9. Even assigning a modest value to the alleged compensatory damages asserted on behalf of each putative class member would result in an aggregate amount well in excess of $5 million when multiplied across the thousands of individuals Plaintiff alleges were affected. Accordingly, independent of the credit-monitoring relief, Plaintiff's claims for equitable relief, declaratory relief, injunctive relief, compensatory damages, actual damages, exemplary damages, punitive damages, restitution, prejudgment and post-judgment interest establish by a preponderance of the evidence that the amount in controversy requirement of 28 U.S.C. § 1332(d) is satisfied.

The Complaint likewise places substantial punitive damages in controversy. Plaintiff repeatedly alleges that Defendant acted with "gross negligence" and "reckless disregard," to allegedly known cybersecurity risks, and expressly seeks punitive damages on behalf of the putative class. Ex. 1 at ¶¶ 183-85, Prayer for Relief ¶ b. Because punitive damages are properly considered in determining the amount in controversy when recoverable under applicable law, the Court may consider the value of Plaintiff's punitive damages demand in evaluating CAFA jurisdiction. Given the size of the proposed class and the nature of Plaintiff's allegations, the

[3] For example, if Plaintiff and proposed class members are compensated for only four hours of time and effort required to "prevent[], detect[], and recover[] from identity theft, tax fraud, and other unauthorized use of their data" (Ex. 1 at ¶¶ 10, 152) at the Tennessee minimum wage rate of $7.25 per hour, for 6,000 individuals included in the proposed class, then that alone would provide an additional $174,000 ($7.25 x 4 hours x 6,000 individuals = $174,000).

potential punitive damages exposure alone is significant and further supports a finding that more than $5 million is in controversy.

Finally, the amount in controversy is further increased by Plaintiff's unjust enrichment claim and request for restitutionary relief. Plaintiff alleges that Defendant received benefits in the form of Plaintiff agreeing to provide her Private Information to Defendant. Ex. 1 at ¶¶ 219-20. Plaintiff further alleges that Defendant failed to adequately protect Plaintiff's Private Information and should not be allowed to retain the full value of these benefits, specifically the costs it saved by failing to implement reasonable or adequate data security practices. Ex. 1 at ¶¶ 220, 222; Prayer for Relief ¶ c. For purposes of determining the amount in controversy, the Court may consider the full value of the restitutionary and disgorgement relief Plaintiff seeks on behalf of the putative class. Because Plaintiff seeks to recover and disgorge funds allegedly retained by Defendant over a period of years in connection with healthcare services provided to a putative class consisting of thousands of individuals, the unjust enrichment claim independently places a substantial amount in controversy and further supports the conclusion that the aggregate amount in controversy exceeds $5,000,000.

Accordingly, the amount in controversy includes, among other things, (1) five years of credit monitoring services for the putative class at $200/year; (2) actual and compensatory damages allegedly suffered by thousands of class members; (3) punitive damages; (4) injunctive relief relating to future cybersecurity measures and monitoring; and (5) restitutionary and disgorgement relief sought under Plaintiff's unjust enrichment claim. Considering these forms of relief in the aggregate, Defendant has established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 as required by 28 U.S.C. § 1332(d)(2). Thus, by

Plaintiff's allegations, the amount in controversy is readily satisfied.[4] *See Dart Cherokee Basin Op. Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[D]efendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold"); *see also Graham v. Champion Int'l Corp.*, No. 2:97-CV-83, 1997 WL 33487768, at *3 (E.D. Tenn. May 16, 1997) (examining the lawsuit type, recognizing that punitive damages were alleged, and exercising "common sense" to determine the amount-in-controversy requirement was satisfied where a specified monetary amount was not alleged).

## III. The Procedural Requirements for Removal Have Been Satisfied.

This notice is timely, and the procedural requirements for removal have been satisfied. University Surgical was served with a copy of the Complaint and Summons, via certified mail, on or around October 29, 2026. Therefore, this notice of removal is filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading," as provided by 28 U.S.C. § 1446(b).

Further, as required by 28 U.S.C. § 1446(a), all process, pleadings, and orders that have been filed or served on University Surgical in the Chancery Court of Hamilton County are attached hereto as Exhibit 1.

Finally, University Surgical has served this notice of removal on counsel for Plaintiff, and it has filed a copy of this notice with the clerk of the Chancery Court of Hamilton County. 28 U.S.C. § 1446(d).

[4] Although the amount in controversy exceeds $5 million for removal purposes, University Surgical denies liability or that Plaintiff is entitled to any such damages.

Dated: November 16, 2026

Respectfully submitted,

**MILLER & MARTIN PLLC**

*/s/Meredith C. Lee*

By: Meredith C. Lee, TN BPR No. 033948
Ian C. Quillen, TN BPR No. 037617
832 Georgia Avenue
1200 Volunteer Building
Chattanooga, TN 37402
(423) 785-8289
meredith.lee@millermartin.com
ian.quillen@millermartin.com

***Counsel for Defendant***
***University Surgical Associates, PLLC***

## CERTIFICATE OF SERVICE

I, Meredith C. Lee, an attorney, hereby certify that on **NOVEMBER 16, 2026**, I caused a true and correct copy of **DEFENDANT UNIVERSITY SURGICAL ASSOCIATES, PLLC'S NOTICE OF REMOVAL** to be served via Electronic Mail upon the following counsel of record:

Grayson Wells
John C. Roberts
**STRANCH, JENNINGS, & GARVEY, PLLC**
223 Rosa L. Parks Ave., Suite 200
Nashville, Tennessee 37203
Phone: (615) 254-8801
Fax: (615) 255-5419
gwells@stranchlaw.com
jroberts@stranchlaw.com

Mariya Weekes*
**MILBERG, PLLC**
333 SE 2nd Avenue, Suite 2000
Miami, FL 33131
Tel: (866) 252-0878
mweekes@milberg.com

Ken Grunfeld*
**KOPELOWITZ OSTROW P.A.**
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
grunfeld@kolawyers.com

**Pro hac vice* forthcoming

*Counsel for Plaintiff and the Putative Class*

*/s/Meredith C. Lee*